## UNITED STATES

v.

**David A. DUTIL, 005 66 8256, Lance Corporal (E–3), U. S. Marine Corps.**

**NMCM 82 0604.**

U. S. Navy-Marine Corps Court of Military Review.

Sentence Adjudged 11 Sept. 1981.

Decided 27 Aug. 1982.

LT Stephen R. Cochell, JAGC, USNR, Appellate Defense Counsel.

CDR Jay M. Siegel, JAGC, USNR, Appellate Government Counsel.

Before ABERNATHY, KERCHEVAL and BARR, JJ.

KERCHEVAL, Judge:

Appellant was convicted at a general court-martial bench trial for the attempted possession of methaqualone, a violation of Article 80, Uniform Code of Military Justice, 10 U.S.C. § 880. The court sentenced appellant to confinement at hard labor for 23 months, forfeiture of all pay and allowances for 23 months, reduction to pay grade E–1, and a dishonorable discharge. The convening authority approved the sentence as adjudged. Appellant now submits four

asserted errors for our consideration. The first of these concerns the jurisdiction of the court-martial.

Appellant was apprehended in a trailer in Onslow County, North Carolina, a short distance from his duty station, Marine Corps Air Station, New River, Jacksonville, North Carolina. The civilian apprehension occurred after the execution and service of a search warrant where four pounds of marijuana and nearly 2,000 suspected methaqualone tablets were discovered. Appellant was subjected to custodial interrogation, then charged with felonious possession of a controlled substance and possession with intent to sell methaqualone, both state code violations.

Testimony indicated that a request was made for civilian authorities to delay prosecution until the military proceeded. Since civilian charges were still pending at the time of court-martial, appellant moved to dismiss for lack of jurisdiction on the theory that civilian authorities fully intended to prosecute. That motion was denied, but appellant again asserts, here, that military authorities may not seek to create jurisdiction over an attempted drug possession when civilian authorities have actively investigated and initiated criminal charges, especially when said charges are pending at the time of military trial. Appellant initially argues that the court-martial lacked subject matter jurisdiction because of insufficient service connection.

■ We agree with the findings of the military judge regarding the matter of service connection, as well as government's analysis of the additional factors supporting subject matter jurisdiction in their brief. Under those facts and the analysis of *United States v. Trottier*, 9 M.J. 337 (C.M.A. 1980), sufficient service connection of the instant drug offense exists to establish subject matter jurisdiction. This conclusion simply creates a matter of concurrent jurisdiction for the military and the State of North Carolina, which more closely parallels appellant's framing of his theory.

■ It is well-settled that the same acts may constitute an offense against both the United States and the particular state in which they may be committed and that a member of the military may be tried by both sovereigns. *See* Paragraph 12, *Manual for Courts-Martial, 1969 (Rev.); United States v. Harrington*, 33 C.M.R. 436 (A.F.B. R.1964); *see also United States v. Rogers*, 7 M.J. 274 (C.M.A.1979); *United States v. Panchisin*, 30 C.M.R. 921 (A.B.R.1961). However, it is for the involved sovereigns and not the criminal to settle which shall inflict punishment, as long as constitutional rights to a full defense are adequately preserved in both jurisdictions. *United States v. Harrington, supra.*

Therefore, since the court-martial had concurrent jurisdiction over the offense of attempted drug possession and the State of North Carolina agreed to allow the military to initially prosecute, appellant's first assignment of error is without merit.

Appellant also asserts that certain of his statements admitted at trial were the product of an involuntary confession in violation of his right to counsel, especially as espoused in *Edwards v. Arizona,* 451 U.S. 477, 101 S.Ct. 1880, 68 L.Ed.2d 378 (1981). We disagree.

During a custodial interrogation by the Onslow County authorities, appellant was properly advised of his right to counsel and his right to remain silent and was then specifically asked, "Do you wish to talk to me now without an attorney present?" The officer didn't remember exactly what response was given by the appellant but "The closest I could get, sir, is the fact that he did not wish to make a statement." (R. 59). The testimony of Officer Cooper also indicated that some eight to ten minutes after declining to talk to him without an attorney present, "Someone came up and said Mr. Dutil wanted to talk to me." (R. 56). The officer apparently talked to appellant and told him to wait until they got downtown where he was readvised of his rights. The record was silent as to who that "someone" was who told Officer Cooper about Dutii's desires to talk about the drugs, nor does the

record reflect the nature of the discussions leading up to that decision to talk.

The military judge held that appellant did not make a request for a lawyer as "the communication of the accused would not be interpreted by a reasonable man under an objective test as expressing a desire to exercise his right to consult counsel or to have counsel present at any interrogation." (R. 92). The defense motion to suppress was denied.

When an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by only showing that he responded to further *police-initiated* custodial interrogation even if he has been advised of his rights. Once an accused has expressed a desire to deal with police only through counsel, he is not subject to *further* interrogation by authorities until counsel has been made available to him, *unless the accused himself initiates* further communication, conversation or exchanges with the police. *Edwards, supra* at 485, 101 S.Ct. at 1885.

Of course, if the findings of the military judge are given credence, a situation would occur where the accused never invoked his right to have counsel present, and since proper warnings were rendered, there would be a clear, intelligent, knowledgeable and voluntary waiver of the right to counsel. We find this reasoning persuasive. However, even viewing the facts of this situation in a light most favorable to appellant, contrary to the trial judge's finding, and assuming appellant did invoke his right to counsel by initially refusing to talk with the police, the record does not establish error. In the ten minute time span between appellant's initial response to questioning and the moment when the sheriff was informed that appellant wished to speak, there is no evidence that police initiated conversation with appellant. Quite the contrary, the most reasonable inference is that appellant initiated the subsequent conversation, for appellant could have easily established otherwise. Accordingly, whether we view this situation as one where appellant failed to invoke his right to counsel or one where appellant initiated the subsequent conversation, there can be no merit to appellant's contention under the doctrine of *Edwards v. Arizona.*

Appellant further asserts that the civilian search warrant served upon him was insufficient under the rule of *Aguilar v. Texas,* 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964). The search warrant clearly meets the two-pronged test of *Aguilar* by establishing that: (1) the informant had previously and personally observed the contraband; and (2), the informant had previously proved himself reliable by providing accurate information to the police. *See* Appellate Exhibit III, page 3.

We specifically find that the sentence awarded was appropriate, here, with a special view to the nature of the offense, appellant's military record, previous nonjudicial punishments, and the general principles of *United States v. Usry,* 9 M.J. 701 (N.C.M.R.1980).

Accordingly, the findings and sentence as approved on review below are affirmed.

Senior Judge ABERNATHY and Judge BARR concur.